# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA WATTS, | CASE NO. 09cv829 WQH (WVG) |
| Plaintiff, | **ORDER** |
| vs. | |
| METROPOLITAN LIFE INSURANCE COMPANY; SYSTEMS INTEGRATION & MANAGEMENT WELFARE BENEFIT PLAN; SYSTEMS INTEGRATION & MANAGEMENT, INC., | |
| Defendants. | |

HAYES, Judge:

The matters before the Court are Plaintiff's Second Application to File Documents Under Seal or, in the Alternative, to Designate Documents as Not Confidential (ECF No. 50) and Defendants' Motion to Maintain Status of Confidential Documents Previously Produced to Plaintiff Under Confidentiality Order (ECF No. 60).

## BACKGROUND

On April 20, 2009, Plaintiff initiated this action by filing a Complaint. (ECF No. 1). Plaintiff's action arises under the Employee Retirement Income Security Act ("ERISA"). *Id.* at 1. On April 2, 2010, the Magistrate Judge issued an order on the confidentiality of Metropolitan Life Insurance Company's ("MetLife") proprietary business information which Plaintiff sought in discovery. (ECF No. 35). The order, which ratifies a stipulation agreed

upon by Plaintiff and MetLife, orders that the documents at issue are confidential pursuant to Federal Rule of Civil Procedure 26(c). *Id.* at 2. The order states in part:

> If any party wishes to use Confidential Information during any motion practice or trial of this action, they will submit such materials under seal, pursuant to the Local Rules of this Court. Documents filed with the Court that are designated Confidential or contain or discuss Confidential Information shall be filed under seal and kept under seal absent a further order of the Court. Where possible, however, only the Confidential portions of filings with the Court shall be filed under seal. . . .
>
> No document shall be filed under seal unless counsel secures a court order allowing the filing of a document under seal. An application to file a document under seal shall be served on opposing counsel, and on the person or entity of the document, if different from opposing counsel. If opposing counsel, or the person or entity who has custody and control of the document, wishes to oppose the application, he/she must contact the chambers of the judge who will rule on the application to notify the judge's staff that an opposition to the application will be filed.

*Id.* at 2-3.

On June 16, 2010, Plaintiff filed an Application to File Documents Under Seal which was denied on June 24, 2010. (ECF Nos. 42-43). On July 14, 2010, Plaintiff filed her Second Application to File Documents Under Seal or in the Alternative to Designate Documents as Not Confidential. (ECF No. 50). On July 19, 2010, Defendants filed an opposition to Plaintiff's request for alternative relief designating the documents not confidential. (ECF No. 53).

On July 28, 2010, this Court issued an Order and held:

> The parties have failed to provide any basis for sealing the documents aside from reference to the Magistrate Judge's order and Defendants' vague assertions that release of the information would 'harm MetLife's competitive advantage in the marketplace.' . . . In the absence of 'compelling reasons,' the Court cannot seal the documents. However, the Court will not grant Plaintiff's requested alternative relief of allowing Plaintiff to file the documents as part of the public record without providing MetLife with an opportunity to meet the burden required to seal the documents at issue.

(ECF No. 56 at 4) (citations omitted).

On August 18, 2010, Defendants' filed a Motion to Maintain Status of Confidential Documents Previously Produced to Plaintiff Under Confidentiality Order. (ECF No. 60). Plaintiff did not file an opposition.

## ANALYSIS

Plaintiff seeks permission to file internal documents related to MetLife's claims processing under seal pursuant to the Magistrate Judge's April 2, 2010 order. (ECF No. 50). In the alternative, Plaintiff requests that the Court make a specific finding that they are not subject to the previous confidentiality order if the Court determines that the documents are not confidential. *Id.* at 2.

Defendants do not oppose Plaintiff's request to file the documents under seal; however, they object to Plaintiff's proposed alternative relief. (ECF No. 53 at 3). "[D]efendants seek an order extending and maintaining the protected status currently applicable to certain documents and information that were provided to plaintiff in reliance on this Court's Order of Confidentiality . . . in response to a discovery order of January 28, 2010 . . . ." (ECF No. 60-1 at 2) (citations omitted). Defendants contend that Plaintiff's proposed Exhibits 6-8 "reflect and constitute excerpts of zealously guarded confidential, proprietary and trade secret information, which if publicly disclosed would cause MetLife competitive harm in the marketplace." *Id.* at 5.

Exhibit 6 contains four pages of MetLife's Claim Management Guidelines which "is the product of extensive investments of time and effort by MetLife, is securely maintained, and is accessible only to MetLife employees with proper clearance." *Id.* Defendants contend that access to the Claim Management Guidelines, "by third parties would allow them, and MetLife's competitors, to utilize MetLife's claim administration procedures and/or to modify their own procedures to match MetLife's, but without investing the considerable time and resources that were invested by MetLife . . . ." *Id.* at 6. Defendants contend that "by a piecemeal erosion of the protection to which MetLife is entitled under the law, [MetLife] would find itself unable to enforce the proprietary interests it legitimately possesses, and its resources would benefit its competitors." *Id.* at 8.

Exhibit 7 "is part of a proprietary and confidential business contract between MetLife and an outside third party vendor, MCN." *Id.* at 9. The contract "is not provided to independent physician consultants by MetLife, but is part of a contract reflecting MetLife's

1  confidential business relationship with a vendor, and MetLife's expectations of the vendor
2  (which retains physicians to provide certain services)." *Id.* MetLife contends that the contract
3  "contains confidential, proprietary, and trade secret information regarding MetLife's internal
4  decision-making processes and its approach to claim administration." *Id*. at 6.

5  Exhibit 8 contains Defendants' supplemental responses to three interrogatories which
6  "reveal the business costs of MetLife as to moneys paid by MetLife to a third party vendor for
7  independent physician consultant reviews over a set time period, as well as the numbers of
8  claims referred to a particular third party vendor for a set time period." *Id*. at 10. Defendants
9  contend that these responses should be protected from disclosure because they contain
10 "confidential tax information regarding third parties[]" and "because they detail MetLife's
11 internal business decisions and proprietary work product regarding the administration of
12 disability claims generally, not just plaintiff's claim in particular." *Id.* Defendants also contend
13 that the responses contain "[i]nformation as to MetLife's costs of doing business, which
14 directly affect its pricing structure and therefore its ability to compete in the marketplace, are
15 competitively sensitive." *Id.* at 6.

16 "Historically, courts have recognized a 'general right to inspect and copy public records
17 and documents, including judicial records and documents.'" *Kamakana v. City and County of*
18 *Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Communs., Inc.*, 435
19 U.S. 589, 597 & n.7 (1978)). Except for documents that are traditionally kept secret, there is
20 "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins.*
21 *Co*., 331 F.3d 1122, 1135 (9th Cir. 2003); *see also Kamakana*, 447 F.3d at 1178-79.

22 "A party seeking to seal a judicial record then bears the burden of overcoming this
23 strong presumption by meeting the compelling reasons standard. That is, the party must
24 articulate compelling reasons supported by specific factual findings, . . . that outweigh the
25 general history of access and the public policies favoring disclosure, such as the public interest
26 in understanding the judicial process." *Kamakana*, 447 F.3d at 1178-79 (citations and
27 quotation marks omitted). The presumed right to access to court proceedings and documents
28 can be overcome "only be an overriding right or interest 'based on findings that closure is

1 essential to preserve higher values and is narrowly tailored to serve that interest.'" *Oregonian*
2 *Publishing Co. v. United States District Court*, 920 F.2d 1462, 1465 (9th Cir. 1990) (quoting
3 *Press-Enterprise Co. v. Superior Court*, 446 U.S. 501, 510 (1985)).

4     "Under the compelling reasons standard, a district court must weigh relevant factors, base its decision on a compelling reason, and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 659 (9th Cir. 2010) (quotations omitted). "'Relevant factors' include the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.'" *Pintos*, 605 F.3d at 659 n.6 (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.1995)); *see also Kamakana*, 447 F.3d at 1179 ( "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.")

16     Exhibit 6, the claim management guidelines, contain trade secret information regarding Defendants' claim administration process which could be used by business competitors to circumvent the considerable time and resources necessary to develop such guidelines. Exhibit 7, the contract between Defendants and a third party vendor, contains trade secret information regarding Defendants' contractual relationship with a third party vendor which could be used by business competitors to determine Defendants' internal decision-making processes and its approach to claim administration. Exhibit 8, Defendants' supplemental interrogatory responses which reveal Defendants' business costs contains trade secret information which could be used by business competitors affect Defendants' pricing structure as well as Defendants' competitiveness in the marketplace.

26     The Court finds that Exhibits 6-8 contain trade secret information which might become a vehicle for improper purposes in the hands of business competitors. Defendants have shown compelling reasons that outweigh the public's interest in disclosure of these materials and

justify filing the documents under seal.

## CONCLUSION

IT IS HEREBY ORDERED THAT Plaintiff's Second Application to File Documents Under Seal (ECF No. 50) and Defendants' Motion to Maintain Status of Confidential Documents Previously Produced to Plaintiff Under Confidentiality Order (ECF No. 60) are GRANTED. Plaintiffs may file Exhibits 6-8 under seal in support of any motion or trial brief.

DATED: October 7, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge